IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>BRAULIO ARIZMENDEZ-CONTRERAS<br><br>                Defendant. | 8:14CR135<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the defendant's motion to vacate under 28 U.S.C. § 2255, Filing No. 53. Under the Rules Governing Section 2255 Proceedings for the United States District Courts ("2255 Rules"), the court must perform an initial review of the defendant's § 2255 motion. *See* 28 U.S.C. § 2255, Rule 4(b). The rules provide that unless "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court," the court must order the United States Attorney to respond to the motion. *Id.*

**I.     FACTS**

On April 9, 2014, defendant was arrested for immigration violations during a search warrant at his residence. Filing No. 1 at 3 (Complaint.) Fraudulent identity documents were seized, along with a 9mm firearm. Filing No. 27 at 2 (Plea Agreement). Defendant's fingerprints were taken and compared with federal databases, revealing that he had been deported on prior occasions. *Id.* Defendant had a prior conviction for delivery of a controlled substance in 1998. Filing No. 1 at 3 (Complaint). After this conviction, he was incarcerated and subsequently deported in 1999. *Id.* Defendant also had a prior conviction for illegal entry and served fifteen months before a second

deportation in December 2006. *Id.* There is no record of any permission sought or granted to allow defendant to return to the United States. Filing No. 27 at 2 (Plea Agreement).[1]

Following his most recent arrest, a grand jury charged defendant with three different counts. Filing No. 13 (Indictment). Count I charged illegal alien found in the United States following deportation in violation of Title 8, United States Code, Section 1326(a). *Id.* Count II charged felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1). *Id.* at 2. Count III charged illegal alien in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(5). *Id.* On June 26, 2014, defendant signed a plea agreement with the United States in which the parties agreed that Count II and Count III would be dismissed in exchange for defendant's plea of guilty as to Count I. Filing No. 27 (Plea Agreement). On November 13, 2014, following the acceptance of the plea agreement and defendant's guilty plea, the District Court sentenced him to fifty-seven months in prison followed by three years of supervised release. Filing No. 39 at 2 (Transcript of Sentencing Proceedings); Filing No. 30 at 2 (Judgment).

---

[1] Defendant states that following his deportation in 1999, his common-law wife Brenda Olivares Arizmendez moved from Mexico to Kansas City for "a couple of years" and committed suicide in 2002. Filing No. 45 at 17 (Transcript of Plea Proceedings); Filing No. 32 at 8 (Modified Presentence Investigation Report (Sealed)). At this time, defendant and his wife were raising two of Olivares' children in addition to three of their own. Filing No. 45 at 18. Defendant states that all five children are U.S. citizens. *Id.* at 17. Defendant and Olivares' children are ages twenty, eighteen, and thirteen. Filing No. 32 at 8 (Modified Presentence Investigation Report (Sealed)). Worried that the children would end up in foster homes, defendant went to the border in El Paso, Texas, to ask for permission to enter the United States but was denied. Filing No. 45 at 17. While defendant apologized for "taking the decision of just crossing [the border] without permission" in order to raise the five children, he admitted to moving to New Mexico with three of the children and working as an electrician. *Id.* at 18; Filing No. 39 at 13 (Transcript of Sentencing Hearing). It was in New Mexico in 2004 where defendant married his second wife, Victoria Wheelden Arizmendez. Filing No. 32 at 8 (Modified Presentence Investigation Report (Sealed)). Defendant and Wheelden have two children, ages ten and six. Filing No. 32 at 8 (Modified Presentence Investigation Report (Sealed)); Filing No. 53 at 20 (Motion to Vacate).

2

On November 25, 2014, defendant filed an appeal of his sentence with the United States Court of Appeals for the Eighth Circuit. Filing No. 34 (Notice of Appeal). The Court of Appeals dismissed defendant's appeal on May 6, 2015. Filing No. 47 (Eighth Circuit Court of Appeals Opinion). On October 7, 2015 defendant filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Filing No. 53 (Motion to Vacate). After performing an initial review of the motion under 28 U.S.C. § 2255, Rule 4(b), the District Court found that it did not plainly appear that defendant was entitled to no relief and required the government to answer. The government requested that the District Court deny defendant's § 2255 motion without an evidentiary hearing. Filing No. 59 at 6 (Answer to Defendant's Motion).

In his § 2255 motion defendant alleges numerous grounds as to ineffective assistance by his counsel, Julie Hansen ("Hansen"), including: (1) counsel's failure to file a motion to suppress the search of his home based on alleged Fifth Amendment violation; (2) counsel's failure to review his Presentence Investigation Report until after rescheduling a sentencing hearing; (3) counsel's failure to file a motion for downward departure based on family and cultural assimilation under U.S.S.G. § 2L1.2; and (4) counsel's failure to meet with him prior to filing his appeal with the United States Court of Appeals for the Eighth Circuit. Filing No. 53 at 5-7 (Motion to Vacate).

**II.    LAW**

Under 28 U.S.C. § 2255, a federal prisoner is entitled to "relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C.A. § 2255(a)).  A movant may raise ineffective

3

assistance of counsel issues in collateral proceedings. See *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003). "The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Under the Fifth and Sixth Amendments, the right to assistance of counsel extends to both trial and to a defendant's first appeal of right. See *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) (stating the right to counsel is fundamental at the trial level); *Evitts v. Lucey*, 469 U.S. 387, 392-93 (1985) (discussing the fundamental right to effective assistance of counsel on a criminal defendant's first appeal as of right).

"'The right to counsel includes the right to reasonably effective counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). In order to make out a claim of ineffective assistance, a petitioner must satisfy the familiar two-part *Strickland* standard, which requires a showing "that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice)." *Alaniz v. United States*, 351 F.3d 365, 367-68 (8th Cir. 2003)).

Deficient performance "is that which falls below the 'range of competence demanded of attorneys in criminal cases.'" *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 687). "The standard is an objective one, viewed in light of professional norms prevailing when the representation took place." *Id.* at 906 (citing *Bobby v. Van Hook*, 558 U.S. 4, 6, 130 S. Ct. 13, 16 (2009)

4

(per curiam)). The court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The reasonableness of counsel's challenged conduct depends upon the facts of the particular case, viewed as of the time of counsel's conduct. *King*, 595 F.3d at 852. To establish prejudice under *Strickland,* a petitioner must "demonstrate that there is a reasonable probability that, but for counsel's claimed unprofessional errors, the result of the proceeding would have been different." *Christenson v. Ault*, 598 F.3d 990, 996 (8th Cir. 2010).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). However, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000); *Witthar v. United States*, 793 F.3d 920, 922-23 (8th Cir. 2015) (stating that prejudice is presumed).

The Supreme Court has rejected "a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000) ("We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient.").[2] Where there is no express direction from a defendant to appeal,

---

[2] The Supreme Court explained:

> For example, suppose that a defendant consults with counsel; counsel advises the defendant that a guilty plea probably will lead to a 2 year sentence; the defendant expresses satisfaction and pleads guilty; the court sentences the defendant to 2 years' imprisonment as expected and informs the defendant of his appeal rights; the defendant does not express any interest in appealing, and counsel concludes that there are no

"counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In making the determination as to whether counsel had been effective in counseling the defendant about appeal, "courts must take into account all the information counsel knew or should have known." *Id.* (noting that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."). *Id.*

### III. DISCUSSION

#### A. Fifth Amendment Violation

Defendant alleges that Immigration and Customs Enforcement ("ICE") agents conducted an illegal search upon his apartment on March 21, 2014. Filing No. 53 at 4. (Motion to Vacate). He maintains that ICE agents "busted the door open" and "broke in to [his] home illegally," violating the Fifth Amendment in the process. *Id.* at 4, 18. Defendant points to a March 21, 2014 Notice of Action from the United States Department of Homeland Security that stated an investigation had "been initiated to determine whether [defendant was] subject to removal from the United States." *Id.* In

---

      nonfrivolous grounds for appeal. Under these circumstances, it would be difficult to say that counsel is "professionally unreasonable," as a constitutional matter, in not consulting with such a defendant regarding an appeal. Or, for example, suppose a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult. In some cases, counsel might then reasonably decide that he need not repeat that information.

*Flores-Ortega*, 528 U.S. at 479-80.

contrast, defendant alleges that his counsel told him that the investigation was not initiated until March 31, 2014. *Id.* at 14. Defendant further alleges that his counsel advised him "not to mention . . . the broken door" to the apartment and also failed to mention the incident at the sentencing hearing. *Id.* at 10, 14.

Whether the investigation into defendant's alien status began on March 21 or March 31 is of no consequence – the record shows that defendant was not arrested by ICE until April 11, 2014, one day after a warrant for his arrest was received. Filing No. 11; Filing No. 12 (Arrest Warrants Returned Executed). The record is completely devoid of any evidence that ICE searched defendant's home on March 21, 2014. Because there is absolutely no evidence of an illegal search of defendant's home by ICE, Hansen's performance as defendant's counsel was not deficient. Considering all circumstances, it was reasonable for Hansen to decide against raising an issue in court for which there is no objective evidence. Defendant cannot demonstrate a reasonable probability that but for Hansen's failure to raise the issue of an illegal search of his home, the outcome of the proceeding would have been different. The court finds that defendant does not satisfy the *Strickland* standard as to his Fifth Amendment claim.

B. Presentence Investigation Report Review

Defendant also alleges that his counsel failed to review his Presentence Investigation Report with him prior to a November 7, 2014 sentencing hearing. Filing No. 53 at 6 (Motion to Vacate). At a November 13, 2014 hearing, Hansen engaged in an extensive conversation with the court discussing why, in her professional opinion, it was best to forgo a presentence investigation report. Filing No. 39 at 7-11 (Transcript of Sentencing Hearing). Hansen expressed her concern about a possible firearms charge

and its potential effect on defendant in the future, should his citizen children ever petition the government on his behalf for an adjustment of status. *Id.* at 10. If defendant did not take the plea deal dismissing the gun charge, then Hansen believed he would "definitely" not be eligible for an adjustment of status. *Id.* at 9. Hansen even went so far as to say she did not believe that defendant had "any chance in hell" of applying for an adjustment if he had any firearm offenses. *Id.* at 10. Likewise, the court agreed with Hansen that if defendant had a gun charge, he could not apply for an adjustment of status. *Id.* Because of these circumstances, Hansen believed it would be in defendant's best interests to forgo a presentence investigation report, thereby avoiding any mention of a possible gun charge.[3] *Id.*

At the time of the hearing, it was reasonable for Hansen to decide that it was in defendant's best interests not to undergo a presentence investigation report. If defendant had not taken the plea deal dropping the gun charge, both Hansen and the court were of the opinion that a firearm offense would bar defendant's citizen children from later petitioning the government on his behalf for an adjustment of status. In order to give defendant's citizen children the greatest opportunity to petition for their father in the future, Hansen decided it was best to forgo the presentence investigation report and

---

[3] The court also notes that two of defendant's children, age six and age ten, do not appear anywhere in the presentence investigation report because they were born after defendant's last stay with the Bureau of Prisons. Filing No. 39 at 11 (Transcript of Sentencing Hearing). While the court expressed concern that without a presentence investigation report, the Bureau of Prisons would not allow defendant's youngest children visit him in prison, Hansen stated that a presentence report from defendant's previous conviction was sealed. *Id.* at 7-8. Hansen elaborated that she was not allowed to see the presentence report from defendant's earlier conviction. *Id.* She did report that giving the court a death certificate of defendant's first wife would "show that [defendant] has these citizen children" even if the children were not mentioned in the presentence investigation report. *Id.* at 10. Hansen also expressed the belief that if defendant's citizen children could produce birth certificates, defendant's counselor "can help him with [arranging visits]." *Id.* at 11.

avoid mentioning a firearm offense altogether.[4] Considering all of these circumstances, Hansen's assistance was reasonable. The court finds defendant fails to satisfy the deficient performance prong of the *Strickland* standard, and thus does not need to address the prejudice prong.

### C. Motion for Downward Departure

Defendant alleges that Hansen's failure to file a motion for downward departure under § 2L1.2 of the United States Sentencing Commission Guidelines Manual for a two-point reduction subjected him to a longer sentence than necessary. Filing No. 53 at 4 (Motion to Vacate). In its answer, the government stated that filing such a motion would have been frivolous because defendant would not meet any of the requirements of § 2L1.2, comment (n.8).[5] Filing No. 59 at 3 (Answer to Motion to Dismiss). The court agrees. Comment (n.8) states:

> There may be cases in which a downward departure may be appropriate on the basis of cultural assimilation. Such a departure should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.
>
> In determining whether such departure is appropriate, the court should consider, among other things, (1) the age in childhood at which defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration

---

[4] At the November 13, 2014 hearing, the government also pointed out that the plea agreement defendant signed was a modified plea agreement. Filing No. 39 at 16 (Transcript of Sentencing Hearing). The government further stated that it was probation office policy not to interview a defendant for a modified plea agreement. *Id.*

[5] The government cited § 2L1.2, comment (n.9) in its answer. Filing No. 59 at 3 (Answer to Motion to Dismiss). The court notes that it is actually comment (n.8) that discusses departure based on cultural assimilation. U.S. Sentencing Guidelines Manual § 2L1.2, comment (n.8) (2013).

> of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S. Sentencing Guidelines Manual § 2L1.2, comment (n.8) (2013). Defendant does not meet these criteria.

Comment (n.8) puts forward a conjunctive test. While cultural ties may have motivated defendant's illegal reentry, fulfilling Part (B), there is no evidence in the record to suggest defendant has resided continuously in the United States since childhood. Thus, defendant cannot meet the requirement of Part (A). Nor would a departure be unlikely to increase the risk of further crimes by the defendant as required under Part (C). Defendant has been convicted of delivery of a controlled substance, driving under the influence, and reentry of a removed alien after felony conviction. Filing No. 32 at 6-7 (Modified Presentence Investigation Report (Sealed)). He has also previously been charged with assault, and was found with a gun in his possession during his most recent arrest. Filing No. 32 at 7 (Modified Presentence Investigation Report (Sealed)); Filing No. 27 at 2 (Plea Agreement). Based on defendant's criminal history, it is improbable that a departure would not increase the risk to the public from further crimes of defendant.

There is no evidence in the record to suggest that defendant began to reside continuously in the United States as a child. The earliest record of defendant residing in the United States is his 1994 conviction for delivery of a controlled substance at age twenty-two. Filing No. 32 at 6 (Modified Presentence Investigation Report (Sealed)).

There is no evidence in the record to suggest he ever attended school in the United States. Defendant reports completing eleven years of education in Mexico as well as on-the-job training as an electrician. *Id.* at 8. The duration of defendant's continued residence is unclear from the record, although defendant has returned to the United States following his two earlier deportations. *Id.* Likewise, the duration of defendant's presence outside the United States in unclear. Defendant does have ties with his wife, children, and two siblings in the United States. *Id.* However, his criminal history cannot be ignored. Following his 1999 deportation after being convicted of delivery of a controlled substance, defendant was found guilty of illegal reentry, this time with a gun in his possession. Filing No. 27 at 2 (Plea Agreement). Accordingly, the court finds that defendant would not meet the criteria for a downward departure under § 2L1.2.

Because defendant would not meet the criteria for a downward departure under § 2L1.2, he cannot prove that Hansen's performance fell below the minimum standards of professional competence. Moreover, defendant cannot demonstrate a reasonable probability that, but for Hansen's alleged error, the result of the proceedings would have been different. Thus, the court finds that defendant does not satisfy the *Strickland* standard as to his claim of counsel's failure to file a motion for downward departure.

### D. Filing the Appeal

Defendant also alleges that Hansen filed an appeal to the Eighth Circuit Court of Appeals without contacting him. As mentioned above, the Supreme Court has rejected a bright-line rule that counsel must always consult with the defendant regarding an appeal. *Flores-Ortega,* 528 U.S. 470 at 480. The Supreme Court further noted that when a court takes into account all the information counsel knew or should have known,

a "highly relevant factor" to consider is whether the appeal follows a guilty plea, which reduces the scope of potentially appealable issues. *Id.* At defendant's request, Hansen filed a timely Notice of Appeal. Filing No. 34 (Notice of Appeal). Hansen also filed an Anders brief.[6] Filing No. 47 (Eighth Circuit Court of Appeals Opinion).

In the plea agreement, defendant waived all rights to appeal his conviction except on the grounds of ineffective assistance "if the grounds for such claim could not be known by the defendant at the time the Defendant enters the guilty plea contemplated by [the] plea agreement." Filing No. 27 at 5 (Plea Agreement). Defendant testified at a June 26, 2014 hearing that he was satisfied with the services that Hansen provided him. Filing No. 45 at 6 (Transcript of Plea Proceedings). Further, the Eighth Circuit Court of Appeals reviewed defendant's appeal, enforcing the appeal waiver and dismissing the appeal. Filing No. 47 at 2 (Eighth Circuit Court of Appeals Opinion). If Hansen found defendant's appeal to be frivolous enough to file an Anders brief, and the Eighth Circuit Court of Appeals agreed with her in dismissing the appeal, then Hansen's failure to consult with defendant before filing an appeal is not deficient performance. Hansen acted in the interest of judicial efficiency and economy, a professional norm that was reasonable considering all of the relevant circumstances. The court again finds defendant fails to satisfy the deficient performance prong of the *Strickland* standard, and thus does not need to address the prejudice prong.

---

[6] *See Anders v. State of Cal., 386 U.S. 738, 744 (1967)* (outlining procedure to follow if counsel, after conscientious examination, finds a defendant's case to be wholly frivolous—the attorney should so advise the court and request permission to withdraw, but the request must be accompanied by a brief referring to anything in the record that might arguably support the appeal).

In conclusion, the court finds that the allegations made by the defendant, even if true, do not state a claim of ineffective counsel under a *Strickland* analysis. Accordingly, the court summarily denies defendant's motion pursuant to 28 U.S.C. § 2255.

THEREFORE, IT IS ORDERED THAT:

1. The defendant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255, (Filing No. 53), is denied.

2. The defendant's motion to appoint counsel, (Filing No. 60), is denied.

3. A separate Judgment in conjunction with this Memorandum and Order will issue this date.

Dated this 14th day of July, 2016

                                      BY THE COURT:

                                      s/ Joseph F. Bataillon
                                      Senior United States District Judge